Filed 4/2/13  Horak v. South Shores Development CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JACK HORAK et al., | B238973 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC379704) |
| SOUTH SHORES DEVELOMENT CORP. et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Yvette M. Palazuelos, Judge.  Affirmed.

Law Office of Ken I. Karan and Ken I. Karan for Plaintiffs and Appellants.

Law Offices of Larry W. Weaver and Susan C. Watts for Defendants and Appellants.

This is the second time this matter is before us. The case stems from claims filed by Jack and Teresa Horak (collectively "Horaks") against South Shores Development Corporation doing business as Lanikai Lane Mobile Home Park and Jed Robinson (Robinson) (collectively "South Shores"), after South Shores served the Horaks with a "Sixty (60) Day Notice to Terminate Possession" of their tenancy (60-day notice) in the Lanikai Lane Mobilehome Park (the park).[1] The Horaks requested that the 60-day notice be withdrawn "on the grounds of discrimination and breach of contract." They moved out of their mobilehome, yet continued to market the property for sale. The Horaks sued South Shores after they came to believe that South Shores was blocking their ability to sell their mobilehome.

In their second amended complaint (SAC), filed July 24, 2008, the Horaks alleged six causes of action against South Shores for: (1) declaratory relief, seeking a declaration that the purported termination of their lease was a nullity and that the lease was still in full force and effect; (2) slander of title, based on South Shores's representations to third parties that the Horaks no longer had rights to the property; (3) breach of contract, based on South Shores's issuance of a false 60-day termination letter and refusal to authorize sale of the property; (4) breach of the implied covenant of good faith and fair dealing; (5) intentional interference with prospective economic advantage; and (6) negligent interference with prospective economic advantage.

A bench trial was held in January 2009. Following trial, a decision was rendered on the merits in favor of South Shores, including $85,000 in attorney fees. The Horaks appealed, and in July 2010 we issued an unpublished opinion in *Horak et al. v. South Shores Development Corp. et al.* (Jul. 23, 2010, B216698) (hereafter *Horak v. South Shores I*). We reversed the trial court's decision on the first cause of action as to Teresa Horak only, finding that her tenancy was not terminated by operation of the 60-day notice

---

[1]     Robinson was the chief executive officer of South Shores Development Corp.

to terminate.[2]  As to Teresa's remaining causes of action, we remanded for reconsideration in light of our decision on the first cause of action.  The judgment was affirmed in full as to Jack, with directions to the trial court to reconsider the attorney fee award in light of our opinion.  We further determined that Teresa was entitled to her costs in connection with that first appeal.

Upon remittitur, the trial court requested briefing and argument from both parties.  The trial court then issued an amended judgment re-entering judgment against Teresa as to the second through sixth causes of action and re-entering the attorney fee award of $85,000 in favor of South Shores.

The Horaks now appeal from the amended judgment.[3]  South Shores cross-appeals from the award of costs and fees entered in favor of Teresa after the first appeal.

We find no error in the court's amended judgment or in the order awarding Teresa her costs and fees incurred in the first appeal.  We therefore affirm the trial court's judgment in full.

## CONTENTIONS

In their direct appeal from the amended judgment, the Horaks argue:  (1) reconsideration of a judgment on remand from an appeal requires a trial court that did not hear the evidence to retry the matter; (2) burdens on the park application process violate the Mobilehome Residency Law (MRL) (Civ. Code, § 798 et seq.); (3) the amended judgment is not based on substantial evidence; (4) the judgment should be reversed for failing to specify judgment for Teresa on the first cause of action; (5) the MRL compels the imposition of monetary penalties for South Shores's violations; and (6) Teresa is the prevailing party under the MRL and is entitled to her attorney fees.

---

[2]  Jack Horak and Teresa Horak will be referred to individually as Jack and Teresa, for ease of reference.

[3]  Since the original judgment was affirmed in full as to Jack, we question whether he has standing to appeal from the amended judgment, which concerned only Teresa. However, South Shores has not raised this issue, therefore we continue to address the Horaks in plural.

3

In its cross-appeal, South Shores challenges the trial court's ruling granting Teresa $43,534.29 in costs and attorney fees after the first appeal of this matter.

## FACTUAL BACKGROUND

The Horaks are a married couple. Pursuant to a rental agreement entered into on or about July 1, 1997 (lease), South Shores rented to the Horaks a mobilehome space in the park, located at 6550 Pronto Drive, Space No. 108, Carlsbad, California. The Horaks purchased the mobilehome on the mobilehome space, in which they resided with their two sons. At all relevant times, South Shores owned the mobilehome park. The lease was explicitly governed by the MRL.

On May 9, 2006, the Horaks gave notice to South Shores of their intention to sell their mobilehome in the park. The notice informed South Shores that the Horaks were selling because of breaches by South Shores in its duties to properly maintain the park and preserve the quiet enjoyment of the park.

On June 8, 2006, Jack was involved in a confrontation with another resident of the park. The police were called, and Jack was arrested. Charges were filed against Jack, but later dismissed.

On June 19, 2006, South Shores prepared the 60-day notice, which was addressed to "Jack Horak and All Residents in Possession" of the property. The notice was served on the Horaks on June 24, 2006. The notice described the altercation between Jack and the other park resident, and provided that "[f]or all the above-described reasons, the management and residents of Lanikai Lane Mobilehome Park have found your conduct totally undesirable and a substantial annoyance to every resident of the Park." The notice demanded that, within 60 days, the Horaks quit the premises and either sell their mobilehome to an approved purchaser or remove it from the premises. After receiving the notice, the Horaks disputed it in writing, asking that the notice "be taken back" on the grounds of discrimination and breach of contract by South Shores. The Horaks indicated that they would be moving out of the mobilehome in July 2006 but that they would "still be a mobile home owner as well as an active member of the HOA and a Board of Director until our home is sold."

4

The Horaks moved out of the property while they marketed it for sale. They tendered rent checks every month, which South Shores never cashed. The Horaks also continued to pay property taxes from May 2006 to the time of trial.

The Horaks' lease contained a provision requiring that any prospective buyer obtain approval from the management of the park before the Horaks could actually sell the property. Thus, as the Horaks marketed their property, they sent prospective buyers to the management of the park for approval. Teresa testified that she referred at least six prospective buyers to South Shores for park approval. When her buyers never returned to finalize the sale, Teresa became concerned that South Shores was unlawfully withholding approval of prospective buyers.

## PROCEDURAL HISTORY

The Horaks filed suit against South Shores on October 25, 2007. The SAC, filed July 24, 2008, became the operative complaint in the action.

Trial commenced on January 12, 2009. On March 17, 2009, the trial court entered judgment on the merits in favor of South Shores on all causes of action. South Shores brought a motion for attorney fees, which the trial court granted in the amount of $85,000.

The Horaks appealed, contending that: (1) the trial court erred in determining that Teresa's tenancy was properly terminated by South Shores based on the actions of Jack; (2) substantial evidence did not support the trial court's finding that the actions of Jack amounted to a "substantial annoyance" under Civil Code section 798.56; (3) the trial court erred in excluding evidence of the alleged potential buyers of the Horaks' mobilehome; (4) the trial court erred in excluding evidence of South Shores's treatment of other allegedly offending residents of the mobilehome park; and (5) the trial court erred by denying sanctions in the form of attorney fees after granting the Horaks' motion to compel discovery. In *Horak v. South Shores I*, this court held that the trial court erred in determining that Teresa's tenancy had been terminated by service of the 60-day notice. The trial court judgment on the first cause of action for declaratory relief was reversed as to Teresa only. As to Teresa's remaining causes of action, the matter was remanded for

5

reconsideration in light of the decision on the first cause of action. As to Jack, the judgment was affirmed in full. The trial court was also directed to reconsider the award of attorney fees to South Shores in light of the appellate opinion. Teresa was granted her costs on appeal.

Remittitur was filed in the superior court on September 28, 2010. The Horaks filed an affidavit of prejudice pursuant to Code of Civil Procedure section 170.6 against the original trial judge, Hon. William F. Fahey, on October 14, 2010. The matter was reassigned.

After reviewing written briefs and hearing arguments of counsel, on November 30, 2011, the trial court entered an amended judgment in favor of South Shores as to the second, third, fourth, fifth and sixth causes of action. The previous attorney fee award of $85,000 was re-entered in favor of South Shores.

On February 24, 2012, the trial court determined that South Shores was the prevailing party in the reconsideration after remand and awarded South Shores $45,800 plus costs in the amount of $140. On the same date, Teresa was awarded her costs and fees from the first appeal, in the total amount of $43,534.29.

On January 30, 2012, the Horaks filed their notice of appeal. On March 1, 2012, South Shores filed a notice of appeal from the order dated February 24, 2012 granting Teresa her attorney fees in the first appeal. The parties stipulated to consolidate the appeals, and filed a request with this court. We granted the request for consolidation.

## DISCUSSION

### I. The Horaks' direct appeal

#### A. *The trial court lacked jurisdiction to re-try the matter on remand*

When the matter was remanded after the first appeal, the Horaks urged the trial court to interpret this court's remand directions as unqualified. The Horaks argued that the remand directions vacated the appealed judgment and all associated rulings and permitted them a new trial. South Shores disagreed, pointing out that the directions in the remittitur were to merely reconsider the second through sixth causes of action in light of our determination that Teresa's tenancy had not been terminated.

6

The trial court agreed with South Shores. It interpreted our remand directions to mean that it should reconsider its verdict on the remaining five causes of action in light of our determination that Teresa's tenancy remained intact. The trial court did not interpret our remand directions as an unqualified reversal.

On appeal, the Horaks challenge the trial court's decision that it was not authorized to order a new trial. The question of whether the trial court correctly interpreted our opinion is an issue of law subject to de novo review. (*In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 674 ["[t]he interpretation of the language of a judicial opinion is a legal determination, and it is therefore subject to de novo review"].)

### 1. Applicable law

"'A reviewing court has authority to "affirm, reverse, or modify any judgment or order appealed from, and may direct the proper judgment or order to be entered, or direct a new trial or further proceedings to be had." (Code Civ. Proc., § 43.) The order of the reviewing court is contained in its remittitur, which defines the scope of the jurisdiction of the court to which the matter is returned.' [Citations.] 'The trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform to those directions is void.' [Citation.]" (*Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859 (*Ayyad*).)

Thus, the rule requiring a trial court to follow the terms of the remittitur is jurisdictional. "The issues the trial court may address in the remand proceedings are . . . limited to those specified in the reviewing court's directions, and if the reviewing court does not direct the trial court to take a particular action or make a particular determination, the trial court is not authorized to do so. [Citations.]" (*Ayyad, supra*, 210 Cal.App.4th at pp. 859-860.)

"In short, when an appellate court remands a matter with directions governing the proceedings on remand, 'those directions are binding on the trial court and *must* be followed. Any material variance from the directions is unauthorized and void.' [Citation.]" (*Ayyad, supra*, 210 Cal.App.4th at p. 860.)

7

**2. The trial court correctly concluded it could not order a new trial**

The language contained in the remittitur filed in the superior court specified that the trial court's judgment on Teresa's cause of action for declaratory relief was reversed. It further directed that Teresa's remaining causes of action should be reconsidered in light of the opinion. The judgment was affirmed in full as to Jack, with further directions that the trial court reconsider its attorney fee award in light of the opinion.

This language does not constitute an unqualified reversal. The directions restricted the proceedings below to a reconsideration of Teresa's remaining causes of action, to the extent that they might be affected by our decision that her tenancy had not been terminated. The trial court's jurisdiction did not extend to any issues outside the scope of these specific directions. In particular, the trial court had no jurisdiction to authorize a new trial.

The Horaks argue that the trial court has the power to order a new trial after remand as long as ordering a new trial is not a material variance from the directions of the appellate court. In support of this claim, the Horaks cite three cases, none of which support this contention. On the contrary, all three cases confirm the trial court's conclusion that it had no power to vary from the appellate court's directive. (See *Hampton v. Superior Court of Los Angeles County* (1952) 38 Cal.2d 652, 655-656 ["The order of the appellate court as stated in the remittitur, 'is decisive of the character of the judgment to which the appellant is entitled. The lower court cannot reopen the case on the facts, allow the filing of amended or supplemental pleadings, nor retry the case, and if it should do so, the judgment rendered thereon would be void'"]; *In re N.M.* (2008) 161 Cal.App.4th 253, 264 ["The trial court must follow the directions of the appellate court and cannot modify or add any conditions to the judgment as directed. . . . Any action that does not conform to those directions is void"]); *Karlsen v. Superior Court* (2006) 139 Cal.App.4th 1526, 1530 (*Karlsen*) ["*The trial court is empowered to act only in*

8

*accordance with the direction of the reviewing court; action which does not conform to those directions is void*" (original italics)].)[4]

The Horaks further argue that if the trial court's acceptance of their Code of Civil Procedure section 170.6 challenge was proper, then it must be true that the remand in this case anticipated a new trial.

The trial court's acceptance of the Horaks' peremptory challenge was not proper. As the Horaks admit, peremptory challenges after remand are only appropriate when the trial judge in the prior proceeding is "assigned to conduct a new trial on the matter." (Code Civ. Proc., § 170.6, subd. (a)(2).) We did not order a new trial on remand, therefore the peremptory challenge should not have been granted. (See *Karlsen, supra*, 139 Cal.App.4th at p. 1530 [by granting motion pursuant to Code of Civil Procedure section 170.6 after a remand with specific directions, "the trial court acted in excess of its jurisdiction"].) However, the Horaks may not object to the trial court's action in granting the peremptory challenge when they made a deliberate tactical choice to file the peremptory challenge. An error which an appellant has invited is not reversible error. (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1).[5]

---

[4] In their reply brief, the Horaks cite *Bank of America v. Superior Court* (1990) 220 Cal.App.3d 613. In the quoted section of *Kruse*, the court was discussing the general rule that an unqualified reversal has the effect of remanding a case for new trial on all issues. The court stated that a limited exception to that rule "should not be applied in cases such as this, where the prior opinion does not unmistakably express an intent to bar retrial." (*Id*. at p. 623.) The discussion in *Kruse* is inapplicable where, as here, the prior appeal did not result in an unqualified reversal.

[5] For the same reason, we reject the Horaks' misleading complaints that the proceedings were unfair because "the trial judge hearing the evidence at trial was not available to enter an amended judgment." There is no evidence that the original trial judge was unavailable. Instead, the record reveals that the Horaks took specific action to ensure that the trial judge that heard the evidence did not make the limited reconsiderations ordered on remand. In spite of this, the Horaks go so far as to complain that "Entry of an amended judgment by a second judge who had not heard the evidence at trial denies Appellants of a full and fair trial." It is axiomatic that under these circumstances, the Horaks cannot be heard to complain that they were deprived of fair consideration of the issues on remand. It was the Horaks' invited error which caused

9

South Shores also did not object to the grant of the peremptory challenge at any stage of the proceedings. Therefore, any objection to the grant of the peremptory challenge by either party has been forfeited.[6]

The Horaks contend, as they did in their first appeal, that they should have been permitted to present a certain witness, Richard Shirek, who was excluded from trial on the ground that his name was not disclosed in discovery as it should have been. In the first appeal of this matter, we held that the trial court did not abuse its discretion in excluding that witness on the ground of willful failure to respond to discovery. The Horaks are not entitled to a new trial simply because they continue to perceive error in that ruling.

The trial court on remand correctly concluded that our directions did not constitute an unqualified reversal. The trial court also correctly understood its task to be limited to a reconsideration of the remaining causes of action as to Teresa in light of our opinion that her tenancy was not terminated by the 60-day notice. The trial court limited its actions to those consistent with our directions, therefore no error occurred.

---

removal of the original trial judge and required a different judge to handle the reconsideration. In addition, the Horaks cannot now complain that the findings made by the first judge were insufficient. Having failed to challenge the original trial court's statement of decision in the first appeal, the Horaks may not do so now. (See *People v. Senior* (1995) 33 Cal.App.4th 531, 535-536 [all available arguments must be raised in an initial appeal from a judgment].)

[6]     While the trial court acted in excess of its jurisdiction in granting the motion pursuant to Code of Civil Procedure section 170.6, this judicial act did not exceed the court's fundamental jurisdiction over the subject matter or the parties to the case. Thus, the court's act of granting the peremptory challenge is subject to forfeiture if done with the consent of the parties. (*In re Marriage of Hinman* (1992) 6 Cal.App.4th 711, 716-717 ["'In its most fundamental or strict sense, lack of jurisdiction means "an entire absence of power to hear or determine the case, an absence of authority over the subject matter or parties." [Citations.] But in its ordinary usage the word encompasses many other situations, including judicial acts in excess of jurisdiction. [Citation.] While the fundamental type of jurisdiction can never be conferred by consent of the parties, the latter type is often subject to principles of consent and waiver. [Citations.]'"].)

### B. *The record supports the amended judgment*

The Horaks further contend that the evidence does not support the trial court's amended judgment in favor of South Shores on the second through sixth causes of action.

We first discuss the standard of review. The Horaks correctly state that certain issues such as liability and causation may present pure questions of law subject to de novo review on appeal where the facts are not contested. However, the Horaks argue that we should evaluate any conflicting evidence in the record under the substantial evidence standard. We disagree. The substantial evidence test is appropriate where the appellate court must review questions concerning the establishment of historical or physical facts. (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.) Because it involves a review of factual findings, the substantial evidence standard of review is appropriately applied where this court must defer to the fact finder's assessment of a witness's credibility. (*Harustak v. Wilkins* (2000) 84 Cal.App.4th 208, 213.) Witness credibility was not an issue on remand, and the trial court did not assess the credibility of any witnesses in reaching its decision. As the trial court correctly stated: "this court is not reconsidering whether Judge Fahey correctly found the facts but whether the facts Judge Fahey found, in light of the appellate directive, support the verdicts."

The matter was remanded for reevaluation in light of our legal conclusion that Teresa's tenancy was not terminated by South Shores's 60-day notice. Thus, the outcome of this appeal turns on whether Teresa's legal status as a tenant has any effect on her remaining causes of action. While this is a mixed question of law and fact, the predominant issue is legal: whether the change in Teresa's status, as decided on appeal, affects the outcome of her remaining causes of action. This inquiry requires "a critical consideration, in a factual context, of legal principles." (*Crocker National Bank, supra*, 49 Cal.3d at p. 888.) We therefore find that the de novo standard of review is more appropriate. (*Ibid.*; see also *Harustak v. Williams, supra*, 84 Cal.App.4th at p. 213 [de novo standard of review appropriate if there are mixed questions of law and fact but legal issues predominate].)

11

As set forth below, we find no error in the trial court's determination that Teresa's status as a non-terminated tenant did not affect the outcome of her remaining causes of action.

### 1. Slander of title

The elements of a cause of action for slander of title are: (1) false and unprivileged disparagement; (2) of title to property; and (3) resulting in actual pecuniary damage. (*Glass v. Gulf Oil Corp.* (1970) 12 Cal.App.3d 412, 419 (*Glass*).) The trial court concluded that the Horaks failed to show that there was any disparagement of the title to Teresa's property. In addition, the trial court determined that Teresa failed to establish that she suffered any damages from any purported disparagement of title. Thus, the trial court concluded, Teresa's status as a non-terminated tenant does not change the original ruling against Teresa on this cause of action.

In discussing disparagement of title, the court pointed out that there was no evidence that any potential buyer was ever informed that Teresa did not hold title to the property. The Horaks argue that there was evidence in the record suggesting that South Shores's staff was instructed to tell any prospective purchaser of Teresa's interest in her lease to contact South Shores's attorney in order to obtain an application. The Horaks claim that the reasonably foreseeable effect of this instruction on potential buyers would be "to walk away from the transaction to avoid buying a lawsuit." The trial court found this argument was too speculative to support a ruling in favor of Teresa on this cause of action.

The Horaks also claim that there was testimony suggesting that South Shores informed members of the public that Teresa had no tenancy to transfer. However, the cited portions of the record do not support the Horaks' claim. Thus, the trial court properly concluded that Teresa failed to establish this element of the tort of slander of title.

In finding that Teresa suffered no damages from any purported disparagement of title, the trial court relied upon the first trial court's statement of decision, in which the court pointed to Teresa's testimony that "she did not receive a bona fide offer from any of

12

the people with whom she was negotiating to sell the mobilehome."  By failing to point to evidence of a bona fide purchaser, the trial court concluded, Teresa failed to establish that she suffered any actual pecuniary injury as a result of any alleged slander of title.

The Horaks argue that evidence of a specific buyer was not necessary to a finding of slander of title.  The Horaks cite *Glass* for the proposition that disparagement may cause pecuniary loss if widely disseminated where, "'but for the disparagement, [the] land or other thing might with reasonable certainty have found a purchaser.'"  (*Glass, supra*, 12 Cal.App.3d at p. 424.)  The principle stated in *Glass* is not relevant.  The trial court found that there was no public disparagement of Teresa's title at all -- much less widely disseminated disparagement.

Under the circumstances, we find that the trial court did not err in finding in favor of South Shores on the second cause of action for slander of title.  Although Teresa's tenancy was not terminated by the 60-day notice, the Horaks failed to establish two essential elements of the tort of slander of title:  disparagement and damages.  The record supports the trial court's ruling that our decision as to Teresa's legal status had no effect on the outcome of this cause of action.  No error occurred.

## 2.  Breach of contract/breach of implied covenant of good faith and fair dealing

The Horaks' claims for breach of contract and breach of implied covenant of good faith and fair dealing require that the Horaks prove that they suffered damage from any such breach.  (See *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.* (2004) 116 Cal.App.4th 1375, 1391, fn. 6 [elements of breach of contract are:  (1) existence of contract; (2) plaintiffs' performance or excuse for nonperformance; (3) defendants' breach; and (4) resulting damage]; *Smith v. City and County of San Francisco* (1990) 225 Cal.App.3d 38, 49 [elements of cause of action for breach of covenant of good faith and fair dealing are:  (1) existence of contractual relationship; (2) implied duty; (3) breach; and (4) causation of damages].)  Based on its review of the evidence, the trial court concluded that the Horaks failed to establish this essential element of these causes of action.

13

The trial court noted that Teresa established a breach of the lease agreement because the 60-day notice was an improper attempt to terminate her tenancy. However, the trial court found that because Teresa was not evicted from her home, the breach did not cause any actual damage to Teresa.

The Horaks argued below, as they argue on appeal, that the damage arose from South Shores's disparaging statements to members of the public that Teresa had no tenancy to transfer. However, the trial court concluded that the record did not support the Horaks' claim that such disparaging statements were made.

Without any evidence of damages, Teresa's cause of action for breach of contract fails. Where the evidence does not support a cause of action for breach of contract, the evidence also does not support a cause of action for breach of the implied covenant of good faith and fair dealing. (*Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1344.) There was no error in the trial court's decision in favor of South Shores on these two causes of action.

### 3. Intentional and negligent interference with prospective economic advantage

In order to prevail on her causes of action for the torts of intentional or negligent interference with prospective economic advantage, Teresa was required to prove that South Shores intentionally or negligently interfered with her ability to market or sell her property. (See *Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 241 [elements of intentional interference with prospective business relationship are: (1) economic relationship between plaintiff and third party; (2) probability of future economic benefit to the plaintiff; (3) defendant's knowledge of the relationship; (4) defendant's intentional acts designed to disrupt the relationship; (5) defendant engaged in independently wrongful act beyond disruption of economic relationship; (6) actual disruption of the relationship; and (7) economic harm to the plaintiff]; *North American Chemical Co. v. Superior Court* (1997) 59 Cal.App.4th 764, 786 [elements of negligent interference with prospective economic relations are: (1) economic relationship between the plaintiff and a third party; (2) a reasonably probable economic benefit to the plaintiff;

14

(3) defendant knew of the existence of the relationship and was aware, or should have been, that if defendant did not act with due care, its actions would interfere with the relationship and cause the plaintiff to lose the probable future economic benefit; (4) the defendant was negligent; (5) the negligence caused damage to plaintiff because of actual interference or disruption; and (6) plaintiff lost in whole or in part the economic benefit or advantage reasonably expected from the relationship].)

As explained above, the trial court found that the Horaks failed to establish at trial that South Shores interfered in any way with Teresa's ability to sell and market her property. There was no evidence that any potential buyer was ever incorrectly informed that Teresa had no tenancy to transfer. There was no evidence that Teresa had a prospective business relationship with any specific buyer, or that South Shores or its attorney ever disrupted any such relationship. Because the Horaks failed to establish this essential element of these two causes of action, our decision as to Teresa's legal status had no effect on the outcome of these two causes of action. The trial court did not err in deciding these two causes of action in favor of South Shores on remand.

### C. The trial court did not abuse its discretion in declining to find that Teresa was the prevailing party on reconsideration after remand

After the initial trial of this matter, the trial court entered judgment in favor of South Shores on all causes of action and awarded South Shores reasonable attorney fees in the amount of $85,000 as the prevailing party. Attorney fees were initially sought under Civil Code sections 1717 (contractual attorney fees) and 798.85 (providing statutory attorney fees to the prevailing party on any action arising out of the MRL).

After partially reversing the judgment, and remanding for reconsideration, this court directed the trial court to reconsider the award to South Shores of $85,000 in attorney fees. On remand, the trial court determined that judgment should remain in favor of South Shores and against Teresa on the second through sixth causes of action. The trial court concluded that South Shores remained the prevailing party on the matter as a whole and that the $85,000 award of attorney fees in favor of South Shores was still proper. While acknowledging that the judgment against Teresa was reversed on the first

15

cause of action, the trial court cited *Mann v. Quality Old Time Service, Inc.* (2006) 139 Cal.App.4th 328, 342 for the proposition that "attorney fees need not be reduced for work on unsuccessful claims if the claims 'are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units.' [Citations.]" The trial court also noted that Teresa suffered no damages from South Shores's improper notice of eviction.

Teresa challenges the trial court's ruling. She argues that she is the prevailing party under the MRL, and that enforcement of the MRL does not hinge on the recovery of damages.

A trial court's determination of the prevailing party is subject to an abuse of discretion standard of review. (*Ritter & Ritter, Inc. Pension & Profit Plan v. The Churchill Condominium Assn.* (2008) 166 Cal.App.4th 103, 126 (*Ritter & Ritter*) ["The trial court's determination of the prevailing party for purposes of awarding attorney fees is an exercise of discretion which should not be disturbed on appeal absent a clear showing of abuse of discretion"].)

We find no abuse of discretion in the trial court's ruling. The court set forth the factors which it was required to consider under both Civil Code sections 1717 and 798.85. Citing *Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1097, the court noted that under Civil Code section 1717 it was required to "compare the extent each party succeeded and failed to succeed as to their contentions, and the relief awarded on contract claims, with the parties' demands on those claims and their objectives, as disclosed by pleadings and briefs, and similar sources." Under Civil Code section 798.85, the court indicated that it had no discretion to deny prevailing party status where one of the following statutory factors applies: "'"[1] the party with a net monetary recovery, [2] a defendant in whose favor a dismissal is entered, [3] a defendant where neither plaintiff nor defendant obtains any relief, and [4] a defendant as against those plaintiffs who do not recover any relief against that defendant" . . .' [Citation.]" (See Code Civ. Proc., § 1032, subd. (a)(4).)

16

Based on these legal principles, the trial court determined that South Shores remained the prevailing party under both Civil Code sections 1717 and 798.85. The court explained that the only cause of action upon which either plaintiff received judgment was Teresa's claim for declaratory relief. However, she was not entitled to any relief on this claim because it did not result in any damages.

If a trial court's exercise of discretion is not erroneous as a matter of law, we will not disturb it. (*In re Marriage of De Prieto* (2002) 104 Cal.App.4th 748, 759.) We find no abuse of discretion in the trial court's ruling that South Shores remained the prevailing party in this matter under both Civil Code sections 1717 and 798.85. Therefore, the trial court did not err in reentering the original attorney fee award in favor of South Shores.

### D. *The trial court did not err in declining to award monetary penalties under the MRL*

The Horaks argue that the trial court abused its discretion when it declined to award Teresa statutory penalties against South Shores for its violation of the MRL. Under Civil Code section 798.86, subdivision (a), "[i]f a homeowner or former homeowner . . . is the prevailing party in a civil action," the homeowner may be awarded "an amount not to exceed two thousand dollars ($2,000) for each willful violation of this chapter by the management." The Horaks argue that South Shores willfully violated Civil Code section 798.55, subdivision (b)(1), which provides: "The management may not terminate or refuse to renew a tenancy, except for a reason specified in this article . . . ."

The Horaks cite several other provisions of the MRL which, they claim, South Shores willfully violated, including Civil Code section 798.56, which provides that a tenancy shall only be terminated for one or more of certain enumerated reasons; Civil Code section 798.57, which states that the management shall set forth in a notice of termination the specific facts describing the reason for the termination; and Civil Code section 798.74, which provides for the transfer of tenancy to a buyer of a mobilehome in the park in accordance with the MRL. Teresa requests that this court find nine

17

unspecified violations of the MRL, entitling her to statutory penalties in the amount of $18,000.

First, to the extent that the Horaks did not seek imposition of statutory penalties against South Shores in the first trial or appeal of this matter, the point is forfeited. (See *People v. Senior, supra*, 33 Cal.App.4th at pp. 535-536 [all available arguments must be raised in an initial appeal from a judgment].) Teresa has failed to provide a citation to the record of the first appeal showing that she has preserved this issue, and it was not something that the trial court was specifically directed to consider on remand. Thus, the trial court was not authorized to consider it, and properly declined to do so. (*Ayyad, supra*, 210 Cal.App.4th at p. 859 ["'The trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform to those directions is void.' [Citation]"].)

Further, even if it had been proper for the trial court to consider this issue, the trial court did not find that Teresa was "the prevailing party" in the remand action, as required for imposition of penalties. (Civ. Code, § 798.86, subd. (a).) Nor did the trial court find that South Shores willfully violated the cited statutes. We assume that the trial court made the findings necessary to support any decision implied in the judgment. (*Homestead Supplies, Inc. v. Executive Life Ins. Co.* (1978) 81 Cal.App.3d 978, 984 ["we must presume in favor of the judgment every finding of fact necessary to support it warranted by the evidence"].) [7] We will not disturb a trial court's discretionary decision

---

[7] Teresa argues that the trial court's refusal to exercise its discretion is itself an abuse of discretion. First of all, as set forth above, Teresa has failed to convince us that the trial court had the authority to consider this issue. Further, we find the cited authorities irrelevant. Teresa first cites *Morris v. Harper* (2001) 94 Cal.App.4th 52, in support of her argument. The case involved a writ of mandamus against Harper, the acting director of the California Youth Authority, to require him to comply with state law by obtaining licenses for certain correctional treatment centers. (*Id.* at pp. 55-56.) Harper argued that the writ of mandate was improperly issued because, among other things, it was an improper attempt to control his discretion over the manner by which he provides medical and mental health care services to the wards in the California Youth Authority's custody. (*Id.* at p. 62.) The Court of Appeal disagreed, stating "[a] refusal to exercise discretion is itself an abuse of discretion." (*Id.* at pp. 62-63.) The case is

18

on this issue absent a clear abuse of discretion, and the burden is on the complaining party to establish an abuse of discretion.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331.)  Teresa has failed to convince us that the trial court abused its discretion in declining to award her statutory penalties.

In sum, Teresa has failed to meet her burden of showing that any error occurred.

### E. *The remaining issues are forfeited*

#### 1. Burdens on the park application process

The Horaks attempt to raise a question of law in this second appeal which they did not raise in the first appeal.  Specifically, the Horaks seek a determination of whether the MRL forbids adding criteria to those set forth in the law for obtaining an application for park residency.  The Horaks present this as a pure question of law, not related to the resolution of any disputed facts.

Having failed to raise this legal issue in the first appeal, the Horaks may not do so now.  (See *People v. Senior, supra*, 33 Cal.App.4th at pp. 535-536 [all available arguments must be raised in an initial appeal from a judgment].)

#### 2. Revision of the judgment

Teresa complains that the amended judgment is not specific with regard to who prevailed on the first cause of action.  She argues that the judgment should be reversed for failing to specify judgment in her favor on the first cause of action.  However, Teresa presents absolutely no legal authority in support of this argument.  In addition, Teresa fails to provide any citation to the record indicating that she objected to the trial court's amended judgment below.

---

completely irrelevant and does not support Teresa's claim that the trial court here improperly refused to exercise discretion to impose statutory penalties.  Teresa also cites *Kim v. Euromotors West/The Auto Gallery* (2007) 149 Cal.App.4th 170, 176-177, in which the trial court declined to exercise its discretion to determine a prevailing party and instead determined that there was no prevailing party.  The appellate court concluded that the trial court's failure to exercise its discretion to determine a prevailing party constituted an abuse of discretion.  (*Id.* at p. 176.)  Here, the trial court did exercise its discretion on that point and concluded that South Shores was the prevailing party.

Thus, Teresa has forfeited this issue. (See, e.g., *Nelson v. Avondale Homeowners Assn.* (2009) 172 Cal.App.4th 857, 862 [when an appellant asserts a point "'but fails to support it with reasoned argument and citations to authority, we treat the point as waived'"]; *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239 [reviewing court may disregard contentions unsupported by citation to the record]; *Estate of Hoffman* (1963) 213 Cal.App.2d 635, 639 [appellant has responsibility to support claims of error with citation and authority; this court is not obligated to perform that function on the appellant's behalf].) "'The burden is on the appellant in every case affirmatively to show error and to show further that the error is prejudicial.'" (*Conner v. Rose* (1963) 219 Cal.App.2d 327, 329.) Teresa has failed to meet this burden, therefore reversal is not warranted.

## II. South Shores's cross-appeal

In the first appeal of this matter, we reversed the first cause of action as to Teresa and remanded the remaining causes of action for reconsideration in light of that ruling. Because the matter was partially reversed and remanded as to Teresa, we concluded that she was entitled to her costs of appeal. Teresa sought her costs and attorney fees incurred in the successful appeal, and the trial court awarded both costs and attorney fees to Teresa in the amount of $43,534.29. In its cross-appeal, South Shores challenges the trial court's order awarding Teresa her attorney fees on appeal. We reject South Shores's arguments, and affirm the award.[8]

---

[8] The Horaks point out certain deficiencies in South Shores's opening brief on cross-appeal. Specifically, the Horaks complain that it does not contain a statement of appealability as required by California Rules of Court, rule 8.204(a)(2)(B), and it does not cite the standard of review. The Horaks ask that South Shores's brief be stricken. While we agree that South Shores's violations of the Rules of Court are not acceptable, we do have discretion to disregard the noncompliance in the interests of justice. (Cal. Rules of Court, rule 8.204(e)(2)(C).) We decline to strike South Shores's brief, and consider its cross-appeal on the merits to the extent that the issues raised therein are not otherwise forfeited.

### A.  *Applicable law*

After remand, the successful appellant must serve a memorandum of costs in the trial court to recover any costs awarded on appeal.  (Cal. Rules of Court, rule 8.278(c).)  Where the Court of Appeal has specified that an appellant is entitled to her costs on appeal, such an award "neither includes attorney's fees on appeal nor precludes a party from seeking them under rule 3.1702."  (Cal. Rule of Court, rule 8.278(d)(2).)  The right to recover attorney fees on appeal "does not arise from the rule; it arises from the applicable statute or contract."  (*Butler-Rupp v. Lourdeaux* (2007) 154 Cal.App.4th 918, 925.)

### B.  *Prevailing party*

South Shores first argues that Teresa was not the prevailing party in the first appeal under Civil Code sections 798.85 or 1717, thus she was not entitled to attorney fees on appeal under those statutes.  When determining the prevailing party, South Shores argues, the court should consider all of the litigation and decide which party had greater success on its claims.  Here, Teresa appealed the judgment as to all six causes of action, but achieved reversal on only one cause of action.  Furthermore, on that one cause of action, Teresa suffered no damages.  Thus, South Shores argues, if the court examines the appeal as a whole, Teresa failed in more of her contentions than she succeeded on.

A trial court's determination of the prevailing party is subject to an abuse of discretion standard of review.  (*Ritter & Ritter, supra*, 166 Cal.App.4th at p. 126 ["The trial court's determination of the prevailing party for purposes of awarding attorney fees is an exercise of discretion which should not be disturbed on appeal absent a clear showing of abuse of discretion"].)  If a trial court's exercise of discretion is not erroneous as a matter of law, we will not disturb it.  (*In re Marriage of De Prieto, supra*, 104 Cal.App.4th at p. 759.)

Here, the trial court determined that Teresa was "clearly the prevailing party on her appeal."  In addition, the trial court noted that it was authorized to act solely in accordance with the directions of the reviewing court, which directed that Teresa was to

21

be awarded her costs of appeal. We see no legal error in this decision, therefore we will not disturb the ruling.

### C. Timeliness

Next, South Shores argues that Teresa's motion for attorney fees was not filed in a timely manner. South Shores points to California Rules of Court, rule 3.1702(c), which provides that a party claiming attorney fees on appeal must file a motion for fees within the time required for serving and filing a memorandum of costs under rule 8.278(c)(1). According to rule 8.278(c)(1), a party claiming that it is entitled to an award of costs must file a memorandum of costs within 40 days of the issuance of the remittitur. In the matter presently before the court, the remittitur was issued on September 28, 2010, and the motion for attorney fees and costs was not filed until December 15, 2011.

However, the trial court held that the motion for attorney fees was timely under California Rules of Court, rule 3.1702(b)(1), which provides:

> "A notice of motion to claim attorney's fees for services up to and including the rendition of judgment in the trial court--including attorney's fees on an appeal before the rendition of judgment in the trial court--must be served and filed within the time for filing a notice of appeal under rules 8.104 and 8.108 in an unlimited civil case . . . ."

California Rules of Court, rule 8.104 provides that a notice of appeal must be filed within 60 days after the clerk of the superior court serves the party with a notice of entry of judgment in the matter or 60 days after the party is served with a notice of entry of judgment. (Cal. Rules Court, rule 8.104(a)(1) & (a)(2).)

The judgment in this matter was entered on November 30, 2011, and Teresa's motion for attorney fees was filed on December 15, 2011. It was therefore timely under California Rules of Court, rule 3.1702(b)(1).

### D. Offset

Finally, South Shores argues that, if this court should affirm the award of attorney fees to Teresa, then the amount awarded should be offset by the judgment for attorney fees owed by Teresa to defendants. South Shores provides only two sentences of

discussion on this topic, without reference to any place in the record where the issue of offset was raised in the trial court or any citation to legal authority directing the standard of review or applicable law for such a determination. Under the circumstances, we find that South Shores has forfeited the issue, and we decline to address it further. (See, e.g., *Nelson v. Avondale Homeowners Assn., supra*, 172 Cal.App.4th at p. 862 [when an appellant asserts a point "'but fails to support it with reasoned argument and citations to authority, we treat the point as waived'"]; *City of Lincoln v. Barringer, supra*, 102 Cal.App.4th at p. 1239 [reviewing court may disregard contentions unsupported by citation to the record]; *Estate of Hoffman, supra*, 213 Cal.App.2d at p. 639 [appellant has responsibility to support claims of error with citation and authority; this court is not obligated to perform that function on the appellant's behalf].)

## DISPOSITION

The judgment is affirmed in full. Each side to bear their own costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.
ASHMANN-GERST


23